IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff-Respondent, | ) | Case No. | CV-08-542-E-BLW |
| | ) | | CR-06-42-E-BLW |
| v. | ) | | |
| | ) | | **MEMORANDUM DECISION** |
| SHAWN J. NELSON, | ) | | **AND ORDER** |
| | ) | | |
| Defendant-Movant. | ) | | |
| | ) | | |

Pending before the Court is Shawn J. Nelson's ("Nelson") Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Docket No. 1 in CV-08-542-E-BLW).[1]  Having reviewed the Government's Response (Docket No. 6 in civil case) and Movant's Reply (Docket No. 7 in civil case) as well as the record in the underlying criminal case, the Court enters the following Order dismissing the § 2255 Motion.

## REVIEW OF 28 U.S.C. § 2255 MOTION

**A.    Background and Summary of Issues**

---

[1]  Unless otherwise noted, all further docket numbers will refer to the underlying criminal case, CR-06-42-E-BLW.

**Memorandum Decision and Order - 1**

On February 28, 2006, Nelson was charged in a single count indictment, along with co-Defendant Kenneth Dirk Madsen ("Madsen"), with knowingly and intentionally possessing 127 grams of iodine, a listed chemical as defined in 21 U.S.C. § 802, or aiding and abetting the same, knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, a schedule II controlled substance, in a manner other than as authorized by 21 U.S.C. §§ 801 through 971 and in violation of 21 U.S.C. § 841(c)(2). *Indictment* (Docket No. 1). The charges arose out of Madsen's purchase of several 16-ounce bottles of tincture of iodine, the discovery in Madsen's vehicle of several items commonly used in the manufacture of methamphetamine, and a receipt found in Nelson's pocket. On July 20, 2006, a jury returned a verdict of guilty against both Nelson and Madsen. *Minute Entry* (Docket No. 48); *Special Jury Verdict* (Docket No. 61).

Following their convictions, both Nelson and Madsen filed Motions for Acquittal (Docket Nos. 52, 54, and 55) and Motions to Revoke Detention Orders Pending Sentencing (Docket Nos. 56 and 57). At trial, the Government's expert witness had testified that seven percent of the iodine tincture solution consisted of iodine that could be easily extracted from the tincture solution and used to manufacture methamphetamine. Common to both parties' motions for acquittal

**Memorandum Decision and Order - 2**

was the argument that the Government had presented insufficient evidence from which the jury could have concluded that the iodine within the tincture of iodine solution they possessed at the time of their arrests maintained a distinct chemical identity as required by *United States v. Lo*, 447 F.3d 1212, 1221 (9th Cir. 2006). Stated another way, they contended that the Government had not proven that the iodine tincture was iodine.  The Court denied the motions for acquittal but granted the motions for release pending sentencing on the grounds that the parties had raised a substantial question which, if resolved in their favor, would result in a reversal of their convictions.  *Motion to Dismiss Tr.* at 51-53.

On December 8, 2006, the Court sentenced Nelson to a term of imprisonment of 39 months to be followed by three years of supervised release. *Amended Judgment* (Docket No. 83).  Although the Court rarely grants release pending appeal, it did so given the unique issue raised by Nelson and Madsen. *Sent. Tr.* 61-62.

On January 14, 2008, the Ninth Circuit affirmed Nelson's conviction finding that the Government's expert witness's testimony met the *Lo* test, that there was sufficient evidence that Nelson knew or had reasonable cause to believe that the iodine in the iodine tincture solution would be used to manufacture methamphetamine, and that Nelson could not demonstrate ineffective assistance of

**Memorandum Decision and Order - 3**

counsel for failing to object to testimony regarding Nelson's admission to having smoked methamphetamine the day of his arrest given that he himself testified to that fact. *United States v. Nelson*, 263 Fed. Appx. 610 (9th Cir. 2008) (Mem.) (Docket No. 115).  Nelson thereafter surrendered to the U.S. Marshal Service pending transport to the institution designated by the Bureau of Prisons.

On December 16, 2008, Nelson timely filed the pending § 2255 Motion alleging (1) ineffective assistance of counsel in several respects, (2) perjury of arresting officers, (3) evidence tampering, (4) failure of the Government to disclose favorable evidence, (5) violation of his Fifth Amendment right against self-incrimination, (6) deficiencies in the Government's expert witness's testimony, and (7) tincture of iodine is not a listed chemical.

The Government's Response, supported by Affidavits of Nelson's trial counsel and appellate counsel, contends that Nelson's claims of ineffective assistance of counsel are speculative and rebutted by counsels' affidavits, that all evidence was disclosed to the defense, and that the claims regarding credibility of certain witnesses are not subject to appellate review and/or are unsupported by any facts.  Nelson disputes some of trial counsel's statements in his Reply.

**B.     Standard of Law**

**1.     28 U.S.C. § 2255**

**Memorandum Decision and Order - 4**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes

**Memorandum Decision and Order - 5**

following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

### 2.    Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's  performance falls "within the wide range of reasonable professional assistance." *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.*  For the court, "it is all too easy to conclude that a

**Memorandum Decision and Order - 6**

particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).   In evaluating the performance prong, the court should "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman,* 477 U.S. at 381-82.

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

In evaluating an ineffective assistance of counsel claim, the Court may consider the performance and prejudice components of the *Strickland*  test in either order.  *Strickland*, 466 U.S. at 697.  Furthermore, the Court need not consider one component if there is an insufficient showing of the other.  *Id.*

**Memorandum Decision and Order - 7**

C.      **Discussion**

1.      **Ineffective Assistance of Counsel**

Nelson alleges several grounds of ineffective assistance of counsel.  In his § 2255 Motion, Nelson appeared to allege that appellate counsel, in addition to trial counsel, was ineffective thus prompting the Government to obtain appellate counsel's affidavit.  However, in his Reply, Nelson clarified that he did not intend to so allege.  *Reply* at 4.  Nelson stated that he was "very pleased with his [appellate counsel's] representation" and is "confident he did all he could under the circumstances."  *Id*.  Therefore, the Court will only address ineffective assistance of counsel claims against trial counsel.

a.      **Failure to Recognize Perjury of Arresting Officers and Ignoring his Statements that the Dick's Market Receipt Was Not His**

Two receipts from Dick's Market were introduced as evidence at trial – one for the Bountiful, Utah, store and one from the Centerville, Idaho, store.  The two receipts evidenced the purchase of items commonly used in the manufacture of methamphetamine.

Nelson contends that had defense counsel adequately reviewed the police report and the transcript of the grand jury proceedings, he would have been aware that the arresting officers, Officer Semrad and Officer Sherman, perjured

**Memorandum Decision and Order - 8**

themselves when they testified at trial that the Bountiful receipt was found in Nelson's pocket at the time of the arrest.[2]  He further alleges that counsel ignored his insistence that the receipt was never in his pocket.

**<u>Perjury</u>**

Perjury is defined as  a willful statement under oath that a material matter is true believing that it is not true.   18 U.S.C. § 1621.  A review of the record indicates that there are some inconsistencies in the officers' testimony regarding the receipt.  However, those inconsistencies do not approach the level of perjury.  While the receipt itself was an important piece of evidence, whether it was found in the car or in Nelson's pocket is not material.

The presence of the receipt in Nelson's pocket was only one of the factors mentioned by the Court and by the Ninth Circuit as indicative of his having reason to believe that Madsen was purchasing the iodine in connection with the manufacture of methamphetamine.  The jury also relied on the fact that Nelson made some inconsistent statements during the arrest and post arrest interview, he had smoked methamphetamine with Madsen that morning as well as on a few other

---

[2]  The receipt evidences the purchase of Heet and two boxes of matches the night before the arrest.  Both the matches and Heet are commonly used in the manufacture of methamphetamine.

**Memorandum Decision and Order - 9**

occasions, he had authored the so-called "grocery list" or "shopping list" of items that are used in the manufacture of methamphetamine, and he wrote down the addresses of two farm supply stores on the receipt that morning.  Therefore, even if counsel's performance had been ineffective in not noticing the inconsistencies, Nelson cannot demonstrate that the result of the trial would have been different.

**<u>Statements Regarding Receipt</u>**

Nelson's claim that defense counsel ignored his insistence that the receipt was not in his pocket is not credible.  Officer Gleed, whose testimony Nelson does not question, testified that he booked Nelson into jail, that he prepared an inventory at the time of booking, and that one of the items removed from Nelson's pocket was a receipt from Dick's Market.  *Trial Tr.* at 127-29 (Docket No. 105-3).  While Nelson disputed that he made the purchase evidenced by the receipt, it does not appear that he ever contested that it was found in his pocket.

Nelson testified at trial that although he did not recall having the receipt, he recalled the officers telling him that it had been taken with his property.  *Trial Tr.* at 241.  He verified the theory that perhaps the receipt came into his possession when Madsen gave him some money.  *Trial Tr.* at 241-42.  When asked on cross-examination "But you don't dispute that the police found [the receipt] in your pocket?" he responded, "No, I don't dispute that."

**Memorandum Decision and Order - 10**

Nelson next claims that Officer Sherman "substituted statements that I had made in speculation to my attorney for the truth" when she testified about his theories for the receipt's presence in his pocket. § 2255 Motion at 9 (emphasis in original). However, her testimony is consistent with defense counsel's statement that the tape of the post-arrest interview revealed that Nelson had been questioned about the receipt and theorized as to how it had gotten into his pocket. *Trial Tr.* at 148-49.[3]  *See also Trial Tr*. at 154-55.  Nelson testified at trial that he had listened to the tapes of the interview.  *Trial Tr.* at 273-74.  He did not indicate that they were inaccurate.

Finally, Nelson contends that defense counsel must have been listening to the tape recording of Madsen's interview and not his when he stated that Nelson was questioned about the receipt at his post arrest interview.  This claim directly conflicts with Nelson's trial testimony where he stated, "But I have listened to the tapes of the interview, and I speak about it during the interview when they ask me. So apparently I was – I was aware that they did take it from – from my person,

---

[3]  The relevant testimony is: "We asked him about this particular receipt.  He said that he thought that morning they had stopped for coffee or something somewhere.  And he said that he had absolutely no money . . . .  And Dirk went in and bought something and came out and handed him a handful of some change, and he thought this receipt may possibly have been with that change when Dirk handed it to him." *Trial Tr.* at 148, ll. 12-21.

**Memorandum Decision and Order - 11**

along with my money and some other personal items I had with me." *Trial Tr.* at 273-74.

It is difficult to reconcile Nelson's current claim that he insisted that the receipt was not in his pocket with his sworn trial testimony that he did not dispute that it was found in his pocket.  It is also difficult to reconcile his current claim that counsel must have been referring to the tape of Madsen's interview when Nelson's sworn trial testimony is that he had listened to the tape of his own interview in which he discussed the receipt.

### b.    Failure to Engage Expert Witness

Nelson alleges that counsel ignored his request for an expert witness to testify on his behalf regarding the "technical aspects of tincture of iodine" and ignored Department of Justice literature that stated that tincture of iodine is not a listed chemical.  Defense counsel states that Nelson never requested that he engage an expert witness.

It is clear that tincture of iodine itself is not a listed chemical.  However, it is also clear that it can be used in the manufacture of methamphetamine as noted in the Department of Justice literature.[4]  To support Nelson's position, an expert

---

[4]  The Department of Justice material submitted by Nelson recognizes that tincture of iodine is readily available, that it is sometimes used by small-scale methamphetamine producers who produce iodine crystals by mixing the tincture

**Memorandum Decision and Order - 12**

witness would have had to have credibly testified that tincture of iodine could not be used in the manufacture of methamphetamine and that iodine does not maintain its distinct chemical identity in the tincture solution.  The existence of such an expert is highly questionable.

### c.       Interference of Personal Problems with Representation

Nelson alleges that counsel "was distraught and preoccupied with his own personal crisis" and that he (Nelson) was "certain" the problems "impaired his ability to provide me an adequate defence (sic)." *§ 2255 Motion* at 8.  Defense counsel acknowledges that a family member was having legal problems at the time of the trial but denies the remaining allegations.  He also denies that the family member's problems caused him any stress.

Nelson's claim, aside from apparently being less than factually accurate, is purely conclusory and speculative and subject to dismissal.  Counsel has practiced before this Court on numerous occasions.  During Nelson's trial, the Court observed nothing remotely suggestive of less than fully engaged advocacy on behalf of Nelson.

### d.       Failure to Object to Statements of Past Methamphetamine Use

---

with hydrogen peroxide, and that it is sold in various sizes from 16-ounce bottles to 50-gallon drums for veterinary use.

**Memorandum Decision and Order - 13**

This issue was raised on appeal.  The Ninth Circuit determined that Nelson could not demonstrate ineffective assistance of counsel for failing to object to Nelson's post-arrest admission to having smoked methamphetamine the morning of his arrest since he himself testified to that fact.  Issues decided on appeal cannot be relitigated in a § 2255 proceeding.  *See United States v. Scrivener*, 189 F.3d 825, 828 (9th Cir. 1999) (citing *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972)).

### 2.      Perjury of Arresting Officers

As stated above, although statements of the arresting officers may have been inconsistent and their handling of evidence less than ideal, there is no indication of perjury.  Nelson's allegations are conclusory and speculative.

### 3.      Evidence Tampering

Nelson contends that evidence was tampered with to support Officer Semrad's allegedly false trial testimony that the receipt was found on his person. Nelson notes that Officer Semrad testified that the process for evidence collection was not followed in this case yet testified about an inventory list from Madsen's search indicating that the process was followed.  From this he concludes that an inventory must have been prepared at the time of his search as well but was later "omitted."  This assertion is pure speculation.

**Memorandum Decision and Order - 14**

Officer Sherman testified that the contents from Nelson's pockets were returned to him after being removed at booking. Officer Gleed, whose testimony Nelson does not question, testified that he booked Nelson into jail, that he prepared an inventory at the time of booking, and that one of the items removed from Nelson's pocket was a receipt from Dick's Market. *Trial Tr.* at 127-29 (Docket No. 105-3).

Nelson may not have purchased the items noted on the receipt. However, he did not dispute in his post-arrest interview that it was found in his pocket. In his testimony at trial, he offered explanations as to why it would have been found in his pocket. However, with the other evidence against him, albeit circumstantial, it is not credible to assume that the officers would have collaborated to "place" the receipt in his pocket.

### 4.    Government's Failure to Disclose Favorable Evidence

Nelson contends that the Government failed to disclose evidence favorable to him because the AUSA questioned Officer Sherman about her interview with Madsen regarding the receipts recovered from his vehicle but did not question her regarding Nelson's interview regarding the same receipts. He points to testimony about an inventory list of items that were taken from Madsen and the lack of testimony about an inventory list of items taken from him. From these factors, as

**Memorandum Decision and Order - 15**

well as what he considers to be inconsistent testimony between the grand jury and the trial and statements in the official incident report, he concludes that the AUSA and the officer collaborated to hide evidence that a receipt was not found in his pocket and to solicit false testimony that the receipt was in his pocket.

The Court finds this allegation to be completely speculative. While, as stated above, the testimony is somewhat inconsistent, it is an enormous leap to conclude that the AUSA either withheld evidence or otherwise acted improperly. The AUSA states in her affidavit that she turned over all evidence to the defense. Defense counsel states in his affidavit that while the officers did not follow perfect protocol, he saw nothing to indicate "misdirection" on the part of law enforcement in this case. He was provided with police reports, the vehicle inventory report, Nelson's booking inventory, grand jury transcripts, and copies of Nelson's and Madsen's recorded statements that he had digitally enhanced.

### 5.    Fifth Amendment Violation

Nelson contends that his statements at the post-booking interview that he had smoked methamphetamine on three separate occasions were made while under considerable distress and without the benefit of legal counsel thereby violating his Fifth Amendment privilege against self-incrimination. This claim is subject to dismissal. It is quite clear from the record that Nelson had waived his right to

**Memorandum Decision and Order - 16**

counsel prior to questioning.  *See Trial Tr.* at 149 (signed rights form at 1:30 p.m.). *See also Trial Tr.* at 240-41 (Nelson testifies that he consented to the interview and signed a rights waiver).

### 6. Lack of Credibility of Government's Expert Witness at Sentencing

Nelson contends that the expert witness should have used a 7% iodine tincture solution rather than the 5% he used when calculating the drug quantity for sentencing purposes.[5]  He is also critical of the expert witness's inability to recall the specific weight of iodine, his identification of PVC pipe as a vinyl tube, and his characterization of his opinion as personal rather than expert.

A review of the sentencing transcript (Docket No. 109) in its entirety reveals that the statements on which Nelson focused were taken out of context or were satisfactorily explained later in the testimony.  The Court notes that the drug quantity calculation was conservative in that the expert witness only took into consideration the pure iodine and not the potassium iodine that also would have yielded some iodine crystals.  Furthermore, the expert witness was thoroughly cross-examined by both Madsen's and Nelson's counsel and was subjected to examination by the Court as well.  The Court then determined that the drug

---

[5]  It would appear that using 5% solution when calculating the drug quantity would work in Nelson's favor.

**Memorandum Decision and Order - 17**

quantity resulted in a base offense level of 24 rather than the 26 calculated in the Presentence Report.

### 7.    Tincture of Iodine Not a Listed Chemical

Finally, Nelson challenges his conviction on the grounds that tincture of iodine is not a listed chemical, that there is nothing on the tincture of iodine containers notifying a purchaser of the consequences associated with its misuse, and that Department of Justice policy states that tincture of iodine is not regulated by law and is sold without restriction.  He also points to Officer Sherman's testimony referring to the "iodine" purchased by Madsen.

Throughout trial, witnesses, counsel, and the Court frequently used "iodine" and "iodine tincture," and "tincture of iodine" interchangeably.  However, although the parties stipulated that iodine was a listed chemical, no one ever contended that tincture of iodine itself is a listed chemical subject to regulation.  The primary issue was whether tincture of iodine was iodine.  The Ninth Circuit reviewed the testimony of the Government's expert witness and affirmed this Court's decision that iodine in a tincture of iodine solution maintains a distinct chemical identity and can thus be considered a listed chemical for purposes of 21 U.S.C. § 841(c). The Ninth Circuit's decision cannot be challenged in a § 2255 proceeding.  *See Scrivener*, 189 F.3d at 828.

**Memorandum Decision and Order - 18**

## CONCLUSION

Nelson has demonstrated neither deficient performance nor prejudice on any of the asserted grounds of ineffective assistance of counsel.  Indeed, given the unique issues involved, the Court not only remembers this case but specifically recalls the strong advocacy that counsel demonstrated at trial, post-trial, and sentencing.  *See Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (court may consider its own recollections and notes of a trial).

As stated above, the *Strickland* standard is "highly demanding." *Kimmelman,* 477 U.S. at 381-82.  It is precisely because of the understandable tendency for a defendant to second guess counsel's performance after conviction, that *Strickland*'s presumption of competent representation is so strong.  *Strickland*, 466 U.S. at 689.

Nelson's remaining claims are either rebutted by the record or are unsupported by any facts.  Two main issues appear to underlie Nelson's various claims.  First, he appears to be unable to accept that tincture of iodine constitutes iodine for purposes of his conviction.  Second, he claims for the first time that the Dick's receipt was not in his pocket.

Nelson has combed the record and focused on isolated – and for the most part insignificant –  portions of testimony to support his conclusory and speculative

**Memorandum Decision and Order - 19**

claims that he was wrongly convicted.  However, although the Court noted that the evidence was weaker against Nelson than it was against Madsen, the Ninth Circuit found that there was sufficient evidence to support the jury's findings. Accordingly, Nelson's § 2255 Motion shall be dismissed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Shawn J. Nelson's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Docket No. 1 in CV-08-542-E-BLW) is DISMISSED.

IT IS FURTHER HEREBY ORDERED that Nelson's Motion to Expedite (Docket No. 8) is MOOT.

IT IS FURTHER HEREBY ORDERED that Case No. CV-08-542-E-BLW is DISMISSED with prejudice.

DATED:  **November 10, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 20**